Good morning, Your Honor. Good morning. May I please cohort? My name is David Wood of Wood and Bender for the appellants on this case. I think the issue for Your Honors today is not whether the underlying Beardsley complaint probably alleged an employment-related act error or omission, or even whether it was more likely than not. What I'm asking Your Honors to do today is to engage in a process of conceiving, because that's what the California Supreme Court says that the court must do on review of a duty-to-defend decision. Is there any conceivable way of reading the underlying complaint to allege something other than an employment-related act? Now, the insurance company in this case, it's a Minnesota insurance company, the record shows that when it got the Beardsley complaint, all it did was to read the complaint and draw the conclusion that this was an employment-related series of acts, that the defamation had to do with an allegation of employee dishonesty, embezzlement of company funds. I will not argue that that's not a reasonable deduction. However, I will argue that it's not a reasonable deduction, and I will argue that it's not a reasonable deduction, and therefore, the question is, is that the only possible deduction? Because the duty-to-defend has a hair-trigger on it. The reason is that when one buys a liability policy, one is placing one's fortunes and one's future in the hands of a carrier that has a duty to control the defense and settlement of that case. And the California case is a quasi-public function. And that means that when the carrier ---- Kagan What's odd about this is that from the point of view of the cause of action, i.e., for defamation, it doesn't care why Mr. Beardsley said whatever he said. So it's never going to be resolved in the course of the litigation because nobody's ever going to care, right? And that's an excellent point, Your Honor, because that's why what an insurance company should do under these circumstances. And I would point to the Berman case, which the court below relied on and which was cited by the Respondents. It's a New York case in which the court, after a trial on the merits of a coverage action not having to do with the duty-to-defend, but with regard to an indemnity decision on a settlement. In other words, by a preponderance of the evidence, did the facts and the circumstances show that the allegations, the defamation, were employment-related? That's different from a duty-to-defend question. And you mentioned what does employment-related mean or what does a rise from employment-related mean. But you haven't couched the issue this way. It seems to me that there may be an ambiguity argument that says, does a rise from employment conditions or whatever the phrase is mean the motive or does it mean the objective circumstances? Is there any California law suggesting that it means the motive  or the objective circumstances? Here we have something that happened on the job, about the job. Does it really matter on any theory whether he did all this because of his personal animosity? I'll answer those two questions, Your Honor. First, there is no California or Ninth Circuit authority parsing the motive of the speaker, the defamer. Two, it is – I believe it is clear from the holding in the HS Equities case that one doesn't get to that point simply because a rising out of an employment-related act, error or omission, the Ninth Circuit found in that case, means it has to be clearly, quote, clearly employment-related. It cut through the linguistic – So there are two issues that seem to me which are construction issues. What happens if there is a dual motive or does motive matter at all? If there is a dual motive, Your Honor, then it's not clearly employment-related. Why? I would suggest that in a – well, it might be at the end of the day after a trial on the merits in the insurer's declaratory relief action. That could have happened here. If the insurer had stepped in and defended under a reservation of rights, brought a declaratory relief action separately and brought out the testimony that you correctly pointed out, would not ordinarily come out in the defamation-wrongful-termination action, but put facts in front of the trial court to show one way or the other what the motive of the speaker was, what was the context, what was the causation of the statement. But because we're – But you're saying it would be an indemnification trial. It would be an indemnification trial in which the standard would not be, was there any conceivable theory, it would be a preponderance of the evidence on indemnity. I submit, Your Honor, that the speaker's motive is relevant as one of the number of factors that H.S. Equities and the Rocky Cola Café cases articulated as being sort of a totality of circumstance that the court has to look at to see if there is any conceivable non-employment-related context and content of the communication. And I would suggest that in a defamation context, where it is the truth or falsity of the statement and the intent of the speaker that are the factual questions typically in a case. But not the motive. Well, it would be if, for example, punitive damages were asked for, as they were here, based on a malicious defamation. Defamation need not be intentional to be actionable, but in order to produce punitive damages, it must be intentional, it must be malicious. And that's what was alleged here. In this complaint, Mrs. Beardsley alleged that her husband had been unfaithful to her, that he had filed a divorce proceeding, and that he had led her to believe that the company's assets were their community property, would be available for her retirement. Now — What is the pertinence of that? I know you keep stressing it. I'm having a lot of trouble understanding the relevance of it. I'm sorry. I didn't hear you the first time. I'm having a lot of trouble understanding the relevance of that. Of the fact that she believes this to be her community property. One of the arguments that Respondents makes, the second argument, is that this could not have been a defamation made in the course of Mr. Beardsley's duties as an officer of the company, because if it were not employment-related, it was a personal defamation. I disagree with that, because what was at issue was a theft of company money. Now, that means that in order for me to show that this was within the course and scope of his duties as an officer, I have to point you to the allegations in the complaint that show that what was alleged to have been stolen was company money. He was protecting company money, or purporting to, in making the allegedly defamatory statement. Therefore, if she felt that the company money could — that she had a right to the company money under community property law in the divorce action he had already filed, that is a fact that I believe should have triggered the insurer to say, wait a second, under the California authorities that were — that had already been on the books as of 2000, when this claim decision was made, there is a relationship other than the employer-employee relationship at work here. So the next question would be, what was the content and context of the statement? And the context is an estranged spouse who also is an employee saying to her — or, excuse me, being told by her estranged husband, who is also her employer, you have stolen company money. Now, if Mrs. Beardsley were held in the declaratory relief action that MS-CIC did not file, to have had a valid belief that she had some claim of right under community property law to those company assets, I believe a jury could have found that what was intended by the defamatory statement was — could be construed as an allegation of employment — of defamation by an employer against a wife who was not acting as an employee. She was acting as someone allegedly grasping for assets of the company in order to protect her position in a pending and separate divorce action. Now, I sense that that hasn't clarified it for you. No, it is somewhat clarifying. I mean, it's the first thing I've heard that suggests why this even objectively viewed, leaving motives aside, might be viewed as something other than an employment-related matter. And I would — I would submit to you, Your Honor, that under these circumstances where the H.S. Equities case was already on the bus, the H.S. Equities case says, if there is a relationship between the defamer and the defamee other than the employer-employee relationship, then a causation question has to be asked, a context and content question has to be asked, and it is clear, and the CIC admits, it did not ask those questions. It interprets this exclusion, both of its exclusions, as excluding all claims by employees under any circumstances against their employers for defamation. That is not the law. The Ninth Circuit found in H.S. Equities that it was a — that that was an overly broad interpretation of the exclusion and held that that was not consistent with the reasonable expectations of the parties. In other words, it was doubtful, uncertain, or ambiguous, and that ambiguity was resolved in favor of coverage, and that's what I would suggest that Your Honors do here, because the question is whether that hair that falls on the hair trigger and triggers the duty to defend, it could conceivably be regarded as a non-employment-related defamation, and I suggest that it can. Do you — Go ahead. What California case is the best one for the conceivable standard? Montrose, Your Honor. Okay. The Supreme Court held in Montrose, and actually there are a number of cases that follow it, where it held that the standard is under any conceivable theory could there be a potentially covered claim alleged in the complaint or facts extrinsic to the complaint. Now, if there were a trial, if MSCIC had done what I think a reasonable insurer would have done here, which is to accept the defense under reservation, do an investigation, and if it felt that this was an employment-related defamation, to file a declaratory relief action, have facts determined in that action, and have a jury and a court make findings of fact as appropriate, then the standard would be, is it more likely than not that this was employment-related? But that's not the standard for triggering a duty to defend. Is there any conceivable theory? And I submit to you that if reasonable people can conceive of a non-employment- related motive, context, content of this statement, then we have just satisfied the test for the duty to defend. The motive part is what I'm having trouble with. I don't – you agree that you have no case which saw the motive as relevant to the arising out of employment-related matters. That's correct, Your Honor. And I keep bringing that up only because the way I read the HS Equities case and the Rocky Cola case, which I think are the two cases that analyze facts most comparable to these, there is no single test, although the HS Equities case comes out and distills its conclusions to is there any – did the defamation have a part in or have a proximate relationship to an employment-related act, error, or omission? For example, in HS Equities, they – there's a quote from some California case that says, the defamation here was clearly employment-related. The statement was made in the context of Capra's employment, which was true here. And its content is directed to Capra's performance during employment, which is true here except for your clarification with regard to the community property issue. Then they go on and say, and this is HS Equities itself, in the case of Bench, the defamation is not clearly employment-related because, although the content is directed to Cade's employment, the statements were not made in the context of Cade's employment, so they seem to be applying a content and context standard, and that standard doesn't involve any motivation. Correct, Your Honor. And I would – I would simply note that when the Ninth Circuit was citing the California case you mentioned, that's the Frank and Freitas case, in which there was no relationship between the defamer and defamee. My point is that the HS Equities case accepted that approach and simply found that it didn't apply to the case before it. Correct, Your Honor. And I think that it is clear under these circumstances there is a relationship other than the employer-employee relationship. So where do we go from there? Rocky Cola and HS Equities are the only cases that have been cited by the parties in which there was a relationship other than the employer-employee relationship. Both of those cases asked, having established that there is some possible extra employment relationship between these parties, what then was the content and the context of the communication? Was it clearly employment-related? Recalling that the question for Your Honors is, is there any conceivable theory under which it could be not employment-related? And I think I posed one. These courts found under those circumstances that in HS Equities it was not employment-related because there was a break-in causation, because the former president of the company had gone out and competed with his former employer, and that it was the act of competition that spawned the defamation. In Rocky Cola, there was a supervisor who was alleged to have sexually harassed and manipulated an employee into providing sex for on-the-job favors. And the Court found that because the personal relationship broke the chain of causation between the supervisor and the employee, the defamation was not on the job or about a job-related issue either. Well, I would disagree with you on the second point, Your Honor, because if she is — she alleged that his motive was to — was to get sex from her for on-the-job favors. Now, the fact that that was an allegation that she did those things places it outside the employment context. But what if she had said, he tried to get me to have a personal relationship with me in order to get on-the-job favors? What if it was an attempt? That would still be actionable as an invasion of privacy, as sexual harassment. I don't think the liability issues would change. But the court — whatever your view may be of the facts, the court's view of the facts was that as an H&S service, unlike in Frank and Freed, the defamatory statement was not made in the context of Bowman's employment, nor was the content of their remark directed to her performance during employment or to anything else relating to her employment. That's how they saw the case. So, again, they applied a content-in-context approach, and they said that it wasn't within the content or context of her employment. You know, Your Honor, in Rocky Cola, the court, I think, overlooked the fact that the motive of the speaker was to force some result in the context of the employment or the content of her employment. I mean, if I understand it correctly, he went to her gym and called her ugly names. She was fired by them. I beg your pardon? I thought she was fired by them. You know, I think the courts would say that the temporal relationship between the defamation and the termination isn't dispositive. So I don't frankly recall. But I thought — well, in any event, I think your point was that in Rocky Cola Cafe, the plaintiff was at her gym, the supervisor defendant came to her gym, called her ugly names, and she alleged in her complaint that he did these things and that he had also maneuvered her into having — she had maneuvered him into having a sexual relationship in order to get on the job favors. Now, that sounds employment-related to me. The fact that the actual defamation, notwithstanding the motive, took place off-site I think should not be determinative here. But it was determinative to the court. The question isn't what was determinative to you. The question is what standard would the court apply. The Rocky Cola Court devoted one sentence that I could really find to why this was not employment-related. It said that the ugly names were not directed to her performance as an employee. But clearly the — clearly the statement, the allegation, that she had maneuvered him into doing things on the job that he wouldn't otherwise have done had an employment tinge to it. Much as the allegations in the Geertzley complaint clearly have an employment overlay, the question is, is there any conceivable nonemployment relationship and nonemployment context? And that's where I would ask the question. Now, you're arguing, though, that they — that the insurance company was on notice of that from within — from the statements within the four corners of the complaint. I am, Your Honor. Okay. So what are you pointing to within the complaint that should have put the insurance company on notice of that? Three things, Your Honor. One, the fact that their marriage had been ongoing for some time. Two, that their marriage had deteriorated. And in fact, Tom Beardsley had filed a marital dissolution action. And three, that he had encouraged her to regard company property as community property. And the date of the divorce filing was in the complaint? You know, I don't think the actual date was, Your Honor. But I believe that the — that the chronology in the complaint, and I can give you the site to the record. Well, I have the complaint. So I'm just trying — I guess the point of my question is, was it clear from the complaint that her husband, the owner of the company, had filed for divorce before the defamatory statement was made? Yes, Your Honor. And it was in paragraph 96. Plaintiff alleged that she was terminated in part to put financial pressure on plaintiff in their marital dissolution action brought by defendant on terms most favorable to him. And that was alleged prior to the defamation. May I reserve my remaining few seconds, Your Honor? Six seconds. All right. Thank you. Good morning. May it please the Court. I think Judge Morrow captured the legal issue properly, and Judge Berzon did likewise. The real question is a content and context one. It is not about motivation. It is about whether the facts alleged in the complaint trigger a potential for coverage. And, Your Honor, you asked about this theory of the duty to defend being based on any conceivable theory. That's not quite what the standard is in California. The standard in California when you're examining the duty to defend, as is stated in La Jolla, it is stated in Montrose, and many other cases going back to Gray v. Zurich nearly 40 years ago, is taking the facts, is there a potential for coverage? I would submit to this Court that if one looks at the complaint that was filed in the underlying case, and one uses the content and context analysis that has been singly identified as the appropriate standard for analyzing an employment related practices exclusion, that there can be no question that in this set of facts there can be no potential for coverage. The starting point is looking at the content and context then, as this Court has identified as the key question, to determine whether alleging when the President of the company alleges that the office manager has taken company funds, and this is a case where the President of the company is in front of an employee or in front of employees, multiple employees, and concerns the job performance of the office manager, namely the office manager. That's the argument, the contrary argument, as I understand it, leaving motive aside, is that's one way to look at it. Another way to look at it was that a disaffected, estranged husband was accusing his wife of stealing money that was rightfully his as part of the marriage. Is that not why he's not? That's the argument that's being made. That's not a motive argument. I don't understand that to be a motive argument. I think it is a motive argument. Why is it a motive argument? The motivation for his making the statement is that you are taking my company's money, as opposed to the allegations which are you are, as an employee, responsible for the fund's embezzlement. Where does it say that? I'm reading the allegation, which I think is the controlling allegation, which says, paragraph 17, Honor about July 1999, Defendant Tom Beardsley requested that plaintiff provide him with a check for a company barbecue. It doesn't even say with a company check. When plaintiff informed Tom Beardsley that the company was having severe cash flow problems because of large accounts receivable and little or no new sales effort, Defendant became enraged, enraged, and included plaintiff of stealing. It doesn't say stealing company money. It says stealing. Okay. Again, looking at the content and the context, you are accusing the office manager of stealing money at work when he's asking for funds for a company function. I think the crux of this comes down. I mean, you can look at it that way and see, read it that way, or you could focus on the context which seems to be alleged throughout the complaint, the context of this bitter divorce and proceedings going on and the interrelationship of the wife in her employment role with the husband in his employment role, and looking at that context in a different picture. That's why I don't see this as motive at all. I'm applying, you know, I'm applying the content and context case. Yes, the words are employment-related, but the context within which the words are being made are an angry fight at a picnic, a company picnic, you know, where it's not just employees but families. I mean, the whole context of this is somehow it involves the marriage. It can't, I can't read the complaint without, it alleges the marriage, it alleges the divorce, and so on a context argument, tell me why we shouldn't examine that context in the complaint. I think there are two ways to look at it. Number one, let's look at the context as it's been identified by the Ninth Circuit in H.S. Services and in the Rocky Cola case. The context there was clearly outside of the employment relationship. In Rocky Cola, it was a former waitress. It was a gentleman who walks into the workout facility and calls her a sexually promiscuous and calculating bitch, clearly content that didn't relate to her performance, but also in a context that was unrelated to the workplace. In H.S. Services, the context was we have a competitor who is a former employee. People are inquiring about that former employee who is now trying to take our business. Here is the way we're going to attack that competitor's relationship with customers. A context, again, having nothing to do with the employment scenario or the employment relationship. Here, it's not at a company picnic where revelry is happening. They're in the office environment, and the request is made for a check. How do we know any of that, by the way? I mean, I agree it doesn't appear to be at the picnic, but how do we know where it even physically was? I think it's that he walks up to her. If you take the allegation she is the office manager and is inside performing those services. I'm just wondering. I'm just asking a technical question. I'm trying to look at what it actually says here. And as far as I can tell, the two relevant paragraphs are paragraph 17 and paragraph 13, and neither of them are very specific at all. I thought they were, but looking at it now, it's not there about where this actually happened or in what exact context. It says that she thinks that the words were heard by other employees of the company, but it doesn't say that. It doesn't even say literally that it happened on company property. I would have to actually look at the complaint, because, candidly, that is not something upon which I focus. I've got the aura of the complaint is she's the office manager who's been performing those services. But that's a question of what potentially could develop out of this complaint. And from what I can tell, the complaint does not chime down the location, actually. I would have to reread that, in all honesty. I'm reading it now, and I'm also rereading it. I could be missing something, but that's what I'm saying. And from the chronology standpoint, I think this is when the affair is becoming known. They're going through the marital disharmony, and I'd have to take a look. But I don't think the divorce occurred until later. And she was terminated in July, and the defamatory statements already had been made. And unlike... Let me pursue what you were arguing. I agree with you. Golden Eagle and H.S. Services are clearly not employment-related contacts. I agree with you on that. What do you do with a case where you have this dual relationship, both employment and personal, and it's both in the complaint? I mean, this is a case that's not clearly, you know, one way or the other. I think it is when you look at the defamation alone. There's clearly a lot happening. The complaint spells out the promises which had been purportedly made. But the allegation is not that the husband walked into the workplace and said, you know what, you did X, Y, and Z at home last night. How dare you do something to undermine the marriage? Or, you know, I caught you last night rifling through my private materials at home. But that's essentially why I thought this argument that I really hadn't focused on understood before about the manner in which this couple treated the company as its community property does have something to do with the question. Because the argument, as I understand it, is that is essentially what he was saying, because this property that he was accusing her of taking was property that was relevant to the any breakup of the marriage, and which she could have been claiming some claim of right to for all we know in terms of what's potentially possible as things go on in this case. Two problems with that. One, you can't divine the duty to defend by reaching into the ether to hypothesize about things that might be. The complaint doesn't speak to the fact that he made statements about her taking company money in the context of the marital relationship. But isn't there, though, are there allegations about that they regarded this as their community property? Well, she is claiming the company is half his and half hers because of commitments that have been made through the years. But that's not what the essence of the defamatory statement is. Again, had the statement been something like, look, this company is half mine, and you're not letting me have the assets of the company that I need to live, that's a different scenario than I need a check and the allegation that you're taking company money. Again, it's directly related to the performance of her duties at the workplace in front of employees that gives rise to the defamatory statements. So if you were to rewrite the complaint, you would do two things. One, you might take it out of the employment-related practices exclusion if you turn this into a personal vendetta about ownership of the company. But you don't have those allegations present in the complaint. Well, how do we know from the bare bones in the complaint? This is the key question, how the case was going to develop. Is there any other discovery in this case as to what the actual allegations were? No. There is this case essentially was litigated and then settled. So we don't have anything that speaks to it. But I mean in the present case, in the present duty to defend case. No. Because the duty to defend would be evaluated by taking the complaint and the policy to determine at the outset whether the potential for coverage existed. And if you look at the facts in the complaint, the duty to defend did not arise, and therefore there was no need for any further investigation into that issue. The plaintiff doesn't even say what he accused her of stealing. Defendant, Tom Piers, he became enraged and accused plaintiff of stealing. For all we know, what he accused her of stealing was the profits of the company. I would submit that if you take the context of the paragraph and the sentences which are juxtaposed, just as we conversationally fill in the ends of each other's sentence, the context is I'm asking for a check. I'm asking for a check for a company function. The response when told that there are insufficient funds for the company to have a check for the company function is you must be stealing. I think unless you utterly ignore the context of the statements, you can't make it anything other than an attack on an employee for taking company money. Let me ask you something else that's bothering me about this. The employment, well, the place of employment itself was also the scene of personal fighting and abuse. And paragraphs 15 and 16 talk about that, that the day after, or it wasn't the day after, but she retrieved messages from her home telephone answering machine. I guess the lesson there is if you're having an affair, don't have your lover leave messages on your home answering machine. Bad form. Bad form. But anyway, so she went to work. She asked him about it at home. He gets abusive. He storms out of the home. Then she's trying to contact him over the weekend, can't find him. Then she goes to work to talk to him, and he becomes verbally abusive and tells her that he would have left her earlier had her 3-year-old grandson not contracted cancer. And it seems to me this is a couple that's playing out their marriage in the work environment. Well, and you're correct that it is certainly a relationship gone amok, and it spills over into the workplace, except that the defamatory statements have to be evaluated in the context of these are statements that you have taken property, and you're the office manager. And let's come back to an important one. It comes down to how narrowly you define the context, because if you define the context as this broad context where clearly their personal relationship was intertwined with their work relationship, then you might say you could say there was a potential for coverage because, you know, here's a defense to the defamation, and she's bringing all this stuff about how she owned half the company, and he would have to prove she didn't. I mean, it's just how narrowly you define context that dictates this. I don't think it's a narrowness of context necessarily. I think it's a context of the statements that you have to evaluate. And the second component is, and I'll borrow from the appellant's reply brief where he says if Mr. Beardsley had uttered defamatory statements at home as Mrs. Beardsley's husband, it would be covered under MSCIC's business policy. Let's not lose sight of the fact that the business obtained the insurance policy, that the business was not sued for defamation, that Mr. Beardsley alone was sued for defamation, that it's only as an officer of the company performing acts as an officer of the company that he obtains coverage because otherwise he's not insured. And if indeed these were personal attacks, a spillover as you're suggesting from this ugly marital dissolution and the poor foreman having answering machine messages left by the lover, then there's no coverage at all. We don't even get to the exclusion. And so one has to walk down the tightrope of saying this is a business action by an officer acting as an officer. And if I take, Judge Wardlaw, if I take your statements that this is a spillover and that one should look at the context of being a continuing progression of disharmony from the days that preceded it, then this is a marital fight, not a fight by an officer acting as an officer. Officers in corporations are not entrusted with the obligation to bring their marriage into the business. That's not what an officer of a corporation does. An officer has duties to the corporation to essentially govern it. And if I were to take your statements that this is the spillover from the fight that had happened starting at home, we don't care about the employment-related practices exclusion. Because then what we have is the context, to borrow your word, the context is a family fight about money in the process of a divorce. And if we take the step of analyzing it from the other side, which is this is a dispute about whether she had taken company monies or not, that is, again, in the context of the complaint, immediately following the allegation that he asked. It's the difference that the an officer of the company can be dealing with something that is the business of the company but isn't employment-related. In other words. Well, but certainly it can happen. But in this context, you kind of have an either-or. I don't think you can walk that tightrope and say. May I finish? I'm sorry. I thought you were. If some stranger was stealing from the company or some other person, some, you know, relative, his son, he was saying that his son was taking money from the company when he wasn't authorized to do it, but the son was not an employee, say he was a co-director or something, that would be not, it would be in his business as officer, in his role as officer, but it would not be employment-related. I would agree. So if he was saying to his wife, co-wife, you're taking money from the company, that's in his role as an officer, but it's not employment-related. Well, except that it is employment-related because, yes, she is the wife, but the accusation is made at work about her work performance. Let's take a little different spin, if we may. Well, I guess that gets back to the point is reading this complaint, how do we know that? Let me give you a hypothetical to point up the problem. Same allegation that he asks her for a check for the company barbecue, and you're assuming that happened in the office in the ordinary course of her duties as office manager. But if all you know is that he asked her for the check for a company barbecue, he could also be down having a meeting with the city people who run the park where they're going to have the barbecue, have another company employee with him, and she comes down on company business, and he says, I need a check for the barbecue. Here are the people that we have to pay. And she says, we don't have any money. He says, you've been stealing. So that doesn't happen on company premises. It's obviously company related, but doesn't that change the analysis? It would change the analysis if, potentially, if you've got defamation heard by third parties in a different context. You've now added a component, which is, and I don't think it does change the analysis. I'll get there in a second. But if you were to take that this is a city function, you've added people who are not co-employees to bring it back into the factual context we have here. No, that just brought in their allegation that company employees heard the statement. Right. But it wouldn't have to be on the premises, is my point. I don't think the premises are dispositive in any respect. I think what it does is it feeds into the context argument by suggesting if I'm telling  a story and I say, this is an interesting story, this is consistent with the complaint, but it's not in the complaint, it doesn't matter where that occurs. Every time you start telling one of these stories, I look at the complaint, and I say it's an interesting story, it's consistent with the complaint, but it's not in the complaint. And there are many other stories that are also consistent with the complaint. Isn't that the ultimate problem here? You've now added, embellished a set of facts that are not in the complaint. You're telling the story. Okay. I think that all you have to do to come up with a conclusion, and the conclusion that Judge Morrow drew, is that it's a statement that's made about her keeping track of company money. It is made to her at work in front of other employees. And I think as soon as you have those facts, that's all you need to reach the conclusion that it's employment related. The at work isn't in there. I'm sorry? The at work is not in the complaint. It does say other employees, but it doesn't say it's at work. And even the fact that she was, as I said, it's not even exactly clear that it was characterized as being company money. He could have characterized it in some other way. The statement is not in here, what he said. He became enraged and accused her of stealing. That's what it says. But in direct response to the question, can I have a check and a follow-up statement that the funds aren't available? All we know, he said, because I'm, because of our marriage problems, you've been taking the money out of this firm that should have gone to two of us and taking it for yourself. And I would submit that that is improperly adding facts that are not reasonably read into a sentence. But they're consistent with the complaint, just as your story is consistent with the complaint. Well, it's not a Is that what the potentially standard means? No. The potentially standard means that if you look at the facts in the complaint and that sentence, that the three sentences juxtaposed I think lead only one conclusion, which is you've been the office manager for 24 years, you're sitting there, there is a request for a check, and it's overheard that the funds aren't available because you're stealing. I don't think there's any reasonable interpretation other than you're stealing funds and, therefore, the money's not available. And that's why I would submit there's no potential for coverage. I think you have to focus on what the claim of defamation is to evaluate the employment-related practices exclusion. All right. Thank you, counsel. Thank you. All right. You have 15 seconds. You asked, Your Honor, what do you do in the case that's not clearly one way or the other? Montrose says you resolve doubts in favor of the defense. I thank you for your work on this case. Thank you. Beardsley v. Mutual Service Casualty Insurance Company will be submitted and will take up U.S. v. King. Thank you.
judges: Tg Nelson, Wardlaw, Berzon